993 So.2d 69 (2008)
COLLIER COUNTY BOARD OF COUNTY COMMISSIONERS, Appellant/Cross-Appellee,
v.
FISH AND WILDLIFE CONSERVATION COMMISSION, Citizens to Preserve Naples Bay, Inc., Conservancy of Southwest Florida, Inc., Douglas Finlay, Jack Hail, Dave Sirkos, James Pergola, and Allen Walburn, Appellees, and
The City of Naples, Appellee/Cross-Appellant.
Marine Industries Association of Collier County, Inc., Appellant/Cross-Appellee,
v.
Fish and Wildlife Conservation Commission, Citizens to Preserve Naples Bay, Inc., Conservancy of Southwest Florida, Inc., Douglas Finlay, Jack Hail, Dave Sirkos, James Pergola, and Allen Walburn, Appellees, and
The City of Naples, Appellee/Cross-Appellant.
Eric Alexander, Appellant/Cross-Appellee,
v.
Fish and Wildlife Conservation Commission, Citizens to Preserve Naples Bay, Inc., Conservancy of Southwest Florida, Inc., Douglas Finlay, Jack Hail, Dave Sirkos, James Pergola, and Allen Walburn, Appellees, and
The City of Naples, Appellee/Cross-Appellant.
Nos. 2D07-1744, 2D07-1777, 2D07-1796.
District Court of Appeal of Florida, Second District.
September 12, 2008.
Rehearing Denied October 30, 2008.
*70 Jeffrey A. Klatzkow, Naples, for Appellant/Cross-Appellee Collier County Board of County Commissioners.
Frank Matthews and D. Kent Safriet of Hopping Green & Sams, P.A., Tallahassee, for Appellant/Cross-Appellee Marine Industries Association of Collier County, Inc.
Eric Alexander, pro se.
Alan S. Richard and James V. Antista, Tallahassee, for Appellee Fish and Wildlife Conservation Commission.
James D. Fox, Christopher D. Donovan, and Robert G. Menzies of Roetzel & Andress, LPA, Naples, for Appellee/Cross-Appellant The City of Naples.
No appearance for remaining Appellees.
SILBERMAN, Judge.
In these three consolidated cases Collier County Board of County Commissioners (Collier County) (case no. 2D07-1744), Marine Industries Association of Collier County (Marine Industries) (case no. 2D07-1777), and Eric Alexander, pro se (case no. 2D07-1796) (collectively referred to as the Petitioners), appeal the final order of Appellee Fish and Wildlife Conservation Commission (FWCC) that grants the waterway marker permit of Appellee the City of Naples (the City). The City cross-appeals and contends, if this court reverses the final order, that evidence was improperly admitted at the hearing before the Administrative Law Judge (ALJ). With respect to the main appeal, we note without further discussion that the ALJ properly determined that the Petitioners have standing to challenge the issuance of the waterway marker permit. We address two of the other issues raised: the FWCC's interpretation of Florida Administrative Rule 68D-23.105(1)(b) and the FWCC's delegation of authority to issue the final order. Based on error regarding these two issues, we set aside the final order and remand for further proceedings. With respect to the cross-appeal, we find no reversible error and affirm on that issue without discussion.
In November 2004, the City enacted an ordinance pursuant to section 327.60, Florida Statutes (2004), to impose slow speed zones in portions of Naples Bay. In December 2004, the City applied for a waterway marker permit to implement the ordinance in accordance with the requirements of Florida Administrative Code Rule 68D-23.105(1)(b). On May 5, 2005, the FWCC issued a notice of intent to issue that permit. The following entities and individuals filed timely petitions for administrative hearing pursuant to sections 120.569 and 120.57, Florida Statutes (2004), to challenge *71 whether the City's permit application met the requirements of rule 68D-23.105(1)(b): (1) Marine Industries; (2) Collier County; (3) Eric Alexander, Jack Hail, Dave Sirkos, James Pergola, and Allen Walburn; and (4) Douglas Finlay.[1]
Rule 68D-23.105(1)(b) provides as follows:
68D-23.105. Criteria for Approval of Regulatory Markers.
(1) The division shall find a valid vessel traffic safety or public safety purpose is presented for ordinances adopted pursuant to Section 327.60, F.S., under the following facts and circumstances:
....
(b) For a Slow Speed Minimum Wake boating restricted area if the area is:
1. Within 300 feet of any bridge fender system.
2. Within 300 feet of any bridge span presenting a vertical clearance of less than 25 feet or a horizontal clearance of less than 100 feet.
3. Within 300 feet of a confluence of water bodies presenting a blind corner, a bend in a narrow channel or fairway, or such other area where an intervening obstruction to visibility may obscure other vessels or other users of the waterway.
4. Subject to unsafe levels of vessel traffic congestion.
5. Subject to hazardous water levels or currents, or containing other navigational hazards.
6. An area that accident reports, uniform boating citations, vessel traffic studies, or other creditable data demonstrate to present a significant risk of collision or a significant threat to public safety.
At issue was whether areas of Naples Bay were congested, subject to hazardous water levels or currents, or otherwise posed a significant risk of collision or a significant threat to public safety. The FWCC referred the cases to the Division of Administrative Hearings (DOAH) for resolution of disputed facts, and the ALJ consolidated the cases. The City filed a motion to relinquish jurisdiction to the FWCC, arguing that there were no facts in dispute because the FWCC interpreted its rules to not require it to make its own factual determination of whether the criteria in rule 68D-23.105(1)(b) had been met. Rather, the FWCC only looked to whether the application stated that it was for one of the enumerated purposes set forth in rule 68D-23.105(1)(b). The ALJ denied the City's motion.
The ALJ conducted a five-day hearing and issued a recommended order that contains eighty-three findings of facts and forty-seven conclusions of law. The ALJ determined that the Petitioners' evidence showed that the City's permit application did not meet any of the three criteria at issue in rule 68D-23.105(1)(b)(4)-(6). The ALJ concluded that the Petitioners' evidence was "more credible, persuasive, and preponderant in quality, resulting in the conclusion that the permit should not be issued as proposed." Thus, the ALJ recommended that the FWCC issue a final order denying the City's application for a waterway marker permit.
*72 The City filed exceptions to the recommended order, and the Petitioners filed a joint response to the exceptions. Marine Industries inquired as to the FWCC's specific procedures for entering final orders and whether oral argument would be allowed before the seven-member commission. Marine Industries eventually learned that the FWCC had delegated to its executive director the authority to issue final orders and that the executive director would do so in this case. The Petitioners objected to the executive director's entering the final order and requested that the seven-member commission consider the recommended order and enter a final order. At a February 7, 2007, meeting of the FWCC counsel for both Marine Industries and Collier County objected to any delegation of the FWCC's authority to its executive director. At the meeting the FWCC reaffirmed that it had delegated authority to its executive director to enter final orders.
On March 21, 2007, the executive director issued a final order granting the City's application for a waterway marker permit. The order indicates that the FWCC adopted all of the findings of fact in the recommended order "to the extent that they are relevant and material." The order reflects that the FWCC rejected most of the ALJ's conclusions of law. In substituted conclusions of law, the order provides that the FWCC was required to investigate only "to make sure the placement of markers are not a hazard to navigation." The order states that "[p]ursuant to Section 327.40, Florida Statutes, the regulatory marker applicant was required to submit a statement describing the purpose of marking. This requirement was satisfied. Nowhere in the statute is FWC authorized to second guess a local government's authority as to whether a boating safety ordinance is needed." The FWCC's position is that it cannot question the validity of the City's statements in its permit application that it meets the fact-based criteria of rule 68D-23.105(1)(b). The Petitioners timely filed their notices of appeal, and on the City's motion, this court consolidated the three appeals.
With respect to the agency's review of the ALJ's recommended order, the agency "may reject or modify the conclusions of law over which it has substantive jurisdiction and interpretation of administrative rules over which it has substantive jurisdiction." § 120.57(1)(l), Fla. Stat. (2006). In addition to stating its reasons with particularity, the agency "must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified." Id. This court's review of an agency's conclusions of law is de novo. Wise v. Dep't of Mgmt. Servs., Div. of Ret., 930 So.2d 867, 871 (Fla. 2d DCA 2006). If this court determines that the FWCC "erroneously interpreted a provision of law and a correct interpretation compels a particular action[,]" then this court must set aside the agency action or remand for further proceedings. § 120.68(7)(d).
The appellate court affords great weight to an agency's construction of a rule that the agency is charged with enforcing and interpreting, but the court may depart from that construction if it is clearly erroneous. See Falk v. Beard, 614 So.2d 1086, 1089 (Fla.1993); see also Sullivan v. Fla. Dep't of Envtl. Prot., 890 So.2d 417, 420 (Fla. 1st DCA 2004) (noting that "`judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning'") (quoting Werner v. State, Dep't of Ins. & Treasurer, 689 So.2d 1211, 1214 (Fla. 1st DCA 1997)). And, of course, an agency is required to follow its own rules. Vantage Healthcare *73 Corp. v. Agency for Health Care Admin., 687 So.2d 306, 308 (Fla. 1st DCA 1997).
The Petitioners contend that the FWCC's interpretation of rule 68D-23.105(1)(b) does not comport with the rule's plain language and thus is not more reasonable than the ALJ's interpretation of the rule. We agree and quote with approval the following conclusions of law from the ALJ's recommended order:
109. The Respondent FWC contends that it is not required to make an independent factual determination concerning whether the application and supporting documentation meet one of the six enumerated factual circumstances or criteria contained in Florida Administrative Code Rule 68D-23.105(1)(b). Rather, it maintains that it has a duty to simply determine, when it receives a waterway marker permit application, whether the necessary items or documents are included in the application. The commission in essence contends that it accepts all factual statements as true because in its view, it cannot question the findings of the local legislative body, here the Naples City Council in enacting a local ordinance, on authority of Lee County v. Lippi, 662 So.2d 1304 (Fla. 2nd DCA 1995) and Ventura v. Lee County, [18 F.A.L.R. 3076 (Fla. Dep't of Envtl. Prot. 1996) ].
110. The Lee County and Ventura decisions are inapplicable to this case. Both of those cases involved direct challenges to a local government's ordinance. In those cases attacks were made on the ordinances themselves. In the instant case the Petitioners are not challenging any aspect of the ordinance, but rather are challenging the permit application and the factual statements made in the application. The Lee County and Ventura decisions are thus inapplicable. Even if they were applicable, they have since been statutorily overruled.
111. In 1996, when the Lee County and Ventura cases were decided, Florida Administrative Code Rule 68D-23.105(1)(b), did not exist. A predecessor, Florida Administrative Code Rule 63N-23, contained no fact-based criteria such as those now found in Florida Administrative Code Rule 68D-23.105(1)(b).
112. Section 327.40(1), Florida Statutes, provides that:
Waterways in Florida which need marking for safety or navigation[ ] purposes shall be [uniformly] marked... (emphasis supplied)
Section 327.40(2)(a), Florida Statutes, further requires, after the submission of an application that the "division will assist the applicant to secure the proper permission from the Coast Guard [where required], make such investigations as needed, and issue the permit." (emphasis supplied)
113. After the Lee County and Ventura decisions, the Legislature amended Section 321.40(2)(c), Florida Statutes, in 2000, specifically authorizing FWC to "adopt rules pursuant to chapter 120 to implement this section."
114. Thereafter in December 2001, the FWC amended Florida Administrative Code Rule 68D-23.105(1)(b), implementing the statutory mandate to adopt rules. This rule sets forth the circumstances when waterways need marking for safety or navigational purposes. The rule sets forth six fact-based circumstances in which waterways need marking for safety or navigational purposes.
(1) The division shall find a valid vessel traffic safety or public safety purpose[ ] is presented for ordinances adopted pursuant to Section 327.60, *74 [F.S.], under the following facts and circumstances:
* * *
(b) For a Slow Speed Minimum Wake boating restricted area if the area is:
* * *
(4) Subject to unsafe levels of vessel traffic congestion.
(5) Subject to hazardous water levels or currents, or containing other navigational hazards.
(6) An area that accident reports, uniform boating citations, vessel traffic studies, or other [creditable] data demonstrate to present a significant risk [of collision] or a significant threat to public safety. (Emphasis supplied).
116. The plain language of Florida Administrative Code Rule 68D-23.105(1) requires the Respondent FWC to make factual findings. Florida Administrative Code Rule 68D-23.105(1) provides, "The division shall find ..."
....
118. The Respondents' and the Intervenors' position that the FWC may accept the City's statement in the permit application to the effect that the application meets any one of the six criteria of Florida Administrative Code Rule 68D-23.105, under the theory that the Ventura and Lee County decisions preclude the FWC from addressing the validity of the local government ordinance, ignores the plain meaning of that rule and is clearly erroneous. See Atlantis [at] Perdido Association, Inc. v. [Warner, 932 So.2d 1206, 1213 (Fla. 1st DCA 2006) ] ("DEP's expertise requires us to consider its construction of the statute carefully, but `nothing requires that we defer to an implausible and unreasonable statutory interpretation adopted by an administrative agency'" [(quoting Sullivan v. Fla. Dep't of Envtl. Prot., 890 So.2d 417, 420 (Fla. 1st DCA 2004)))].
119. The Respondent FWC has the authority and obligation to consider the City's permit application and make its own independent analysis and determination as to whether the permit application meets one of the six factual circumstances or criteria of the FWC's own rule, Florida Administrative Code Rule 68D-23.105(1)(b). While an agency's interpretation of its own rules should be afforded deference, "`judicial adherence to the agency's view is not demanded when it is contrary to the statute's [or rule's] plain meaning.'" Sullivan v. [Fla. Dep't of Envtl. Prot., 890 So.2d 417, 420 (Fla. 1st DCA 2004) (quoting Werner v. State, Dep't of Ins. & Treasurer, 689 So.2d 1211, 1214 (Fla. 1st DCA 1997)) ]. "The agency is obligated to follow its own rules." Vantage Healthcare Corp. v. Agency for Health Care Administration, 687 So.2d 306, 308 (Fla. 1st DCA 1997).
120. The Respondent FWC and the City's position that it merely reviews the waterways marker application at issue to determine whether all the necessary information has been provided in the application would render the FWC's duty only a ministerial one. It would not thereby independently make a determination or confirmation that any of the factual scenarios or criteria of the FWC's own rule has been met. Such an interpretation is, however, contrary to the plain meaning of both Section 327.40, Florida Statutes, and Florida Administrative Code Rule 68D-23.105(1)(b). It would render those sections and criteria meaningless. It cannot be concluded that the Legislature, in enacting Section 327.40, Florida Statutes, and the commission, in 2001, when *75 it enacted the subject rule, did so, without a reason. There would be no purpose for the statute or the Rule, in having specific factual criteria for the grant of a permit, if the agency (and the Division of Administrative Hearings by referral of the formal proceeding challenging the agency permitting action) could not judge whether the criteria in the Rule have been met.
121. The Respondent City has maintained throughout the proceeding that FWC and the Division of Administrative Hearings have no jurisdiction to consider the wisdom or validity or purpose behind the ordinance adopted by the Naples City Council. That position, however, confuses a review of the permit application at issue with a review of the validity of the ordinance.
122. As concluded above, Florida Administrative Code Rule 68D-23.105(1)(b) contains six specific fact-based circumstances concerning when issuance of the waterway marker permit would be authorized. Such a fact-based determination as to whether the permit application meets those criteria is properly the subject of an FWC determination and, by referral of the related formal proceeding, of a determination by the Division of Administrative Hearings.
Based on the above reasoning, we conclude that the FWCC's interpretation of rule 68D-23.105(1)(b) is not as reasonable or more reasonable than the ALJ's interpretation of the rule and that the FWCC's interpretation is clearly erroneous. To the extent that any argument may be made that rule 68D-23.105(1)(b) is invalid, the argument must be made in a proceeding pursuant to section 120.56, the statute governing challenges to rules and providing for an administrative determination that a rule is invalid.
Marine Industries also argues on appeal that the FWCC illegally delegated its final-order authority to the executive director of the FWCC in violation of chapter 120. Thus, Marine Industries contends that this court must set aside the agency action because the FWCC's exercise of discretion to delegate its decision-making authority violated a statutory provision. See § 120.68(7)(e)(4).
The City and the FWCC assert that because section 120.57(1)(l) only refers to the "agency" entering the final order and not the "agency head," delegation to the executive director was proper. For example, section 120.57(1)(l) states, "The agency in its final order may reject or modify the conclusions of law over which it has substantive jurisdiction and interpretation of administrative rules over which it has substantive jurisdiction." In addition, the City points to the definition of executive director in section 20.331, Florida Statutes (2006), the statute governing the FWCC. Section 20.331(3)(a) authorizes the FWCC, in order "[t]o aid the commission in the implementation of its constitutional and statutory responsibilities," to appoint an executive director. "The executive director shall supervise, direct, coordinate, and administer all activities necessary to fulfill the commission's constitutional and statutory responsibilities." Id. Thus, the City argues that if the FWCC commissioners have a statutory responsibility to issue final orders and the executive director must administer all activities necessary to fulfill the commissioners' statutory responsibilities, then the executive director can issue final orders.
Marine Industries contends that only the agency head has final-order authority. Section 20.331(2) states, "The head of the Fish and Wildlife Conservation Commission is the commission, with commissioners appointed by the Governor as provided for *76 in s. 9, Art. IV of the State Constitution." Section 120.52(2) defines agency action as "the whole or part of a rule or order, or the equivalent, or the denial of a petition to adopt a rule or issue an order." Section 120.52(7) defines a final order as
a written final decision which results from a proceeding under s. 120.56, s. 120.565, s.120.569, s. 120.57, s. 120.573, or s. 120.574 which is not a rule, and which is not excepted from the definition of a rule, and which has been filed with the agency clerk, and includes final agency actions which are affirmative, negative, injunctive, or declaratory in form.
Thus, by statute, an order involves "agency action," and the final order here is "final agency action." Section 120.52(3) provides, "`Agency head' means the person or collegial body in a department or other governmental unit statutorily responsible for final agency action." Therefore, because the agency head is the seven-member commission, it has responsibility for final agency action which includes the final order at issue.
The fact that the executive director can "administer" activities necessary to fulfill the FWCC's statutory responsibilities does not mean that the executive director can completely perform the FWCC's duties. In the context here, "administer" means "to manage or direct (the affairs of a government, institution, etc.)." Webster's New World College Dictionary, 18 (4th ed. 2001).
The FWCC did not delegate authority to the executive director only to draft the order based on an FWCC determination regarding the issues before it. Rather, the FWCC delegated authority to the executive director to make the FWCC's decision, as well as to draft and issue the order. We conclude that the FWCC's delegation of its complete decision-making responsibility for final agency action concerning the issues before it is improper and not supported by the applicable law. Thus, we set aside the final order and remand for further proceedings consistent with this opinion.
Final order set aside and case remanded for further proceedings.
VILLANTI, J., and CANADY, CHARLES T., Associate Judge, Concur.
NOTES
[1] The individual petitioners are charter boat captains and recreational boaters. Jack Hail, Dave Sirkos, James Pergola, Allen Walburn, and Douglas Finlay have not filed a brief in this appeal. In addition, the intervenors below, Citizens to Preserve Naples Bay, Inc., and Conservancy of Southwest Florida, Inc., have not filed an appellate brief. Appellant Eric Alexander, pro se, filed notices joining in the briefs of Marine Industries and Collier County.