VILLANTI, Judge.
Dr. Paul Kevin Christian, a licensed chiropractor, appeals from a corrected final order of the Florida Department of Health (DOH), Board of Chiropractic Medicine (the Board), adopting the findings of the recommended order of the administrative law judge (ALJ) that Dr. Christian committed two violations of Florida law governing the practice of chiropractic medicine.[1] Because one of the violations found by the ALJ was not charged in the administrative complaint and because there was insufficient evidence presented at the administrative hearing to prove the other violation, we reverse the final order with directions to dismiss the complaint.
In paragraph 45 of the recommended order, the ALJ found:
The Department has established by clear and convincing evidence that Dr. Christian failed to accurately describe the hyperabduction test results on his initial examination report of April 26, 2006. His noting that the hyperabduction test results were positive on the initial examination report created an inconsistency in the medical records so that it would be impossible to tell from the medical records whether the hyper-abduction test was negative or positive. The Department has established by clear and convincing evidence that Dr. Christian violated sections 460.413(l)(m) and 460.413(l)(ff) and rule 64B2-17.0065(3).
However, this alleged violation was not charged in the administrative complaint. The complaint contained no factual allegations whatsoever in regard to hyperabduction testing or the alleged failure to accurately describe the test results.
Section 120.60(5), Florida Statutes (2005), requires that an administrative complaint must afford “reasonable notice to the licensee of facts or conduct which warrant the intended action.” The court in Cottrill v. Department of Insurance, 685 So.2d 1371, 1372 (Fla. 1st DCA 1996), held that predicating disciplinary action against a licensee on conduct never alleged in the administrative complaint violates section 120.60(5). In Trevisani v. Department of Health, 908 So.2d 1108, 1109 (Fla. 1st DCA 2005), the court, relying in part on the reasoning of Cottrill, held that a physician may not be disciplined for an offense not charged in the complaint. See also Marcelin v. Dep’t of Bus. & Prof'l Regulation, 753 So.2d 745, 746-47 (Fla. 3d DCA 2000) (striking three violations because they were not alleged in the administrative complaint); Ghani v. Dep’t of Health, 714 So.2d 1113, 1114-15 (Fla. 1st DCA 1998) (reversing the finding that Ghani violated section 458.331, Florida Statutes (1993), by failing to order ambulance transport where the administrative complaint did not allege a failure to order ambulance transport). Based on the above authorities, we reverse that portion of the corrected final order adopting the ALJ’s finding that Dr. Christian failed to accurately describe the hy-perabduction test results because this alleged violation was not charged in the administrative complaint.[2]
*418 We now turn to the second violation that Dr. Christian was found to have committed. Paragraph 44(k) of the administrative complaint alleged that Dr. Christian violated section 460.413(l)(m), Florida Statutes (2005), and/or rule 64B2-17.0065 of the Florida Administrative Code “[b]y failing to record or maintain daily treatment notes that justified the totality of the care provided” to the patient. Section 460.413(l)(m) states that a chiropractor may be disciplined for
/'flailing to keep legibly written chiropractic medical records that identify clearly by name and credentials the licensed chiropractic physician rendering, ordering, supervising, or billing for each examination or treatment procedure and that justify the course of treatment of the patient, including, but not limited to, patient histories, examination results, test results, X rays, and diagnosis of a disease, condition, or injury. X rays need not be retained for more than 4 years.
(Emphasis added.) Rule 64B2-17.0065 states, in pertinent part:
(3) The medical record shall be legibly maintained and shall contain sufficient information to identify the patient, support the diagnosis, justify the treatment and document the course and results of treatment accurately, by including, at a minimum, patient histories; examination results; test results; records of drugs dispensed or administered; reports of consultations and hospitalizations; and copies of records or reports or other documentation obtained from other health care practitioners at the request of the physician and relied upon by the physician in determining the appropriate treatment of the patient. Initial and follow-up services (daily records) shall consist of documentation to justify care. If abbreviations or symbols are used in the daily record-keeping, a key must be provided.
[[Image here]]
(6) Once a treatment plan is established, daily records shall include:
(a) Subjective complaint(s)
(b) Objective finding(s)
(c) Assessment(s)
(d) Treatment(s) provided, and
(e) Periodic reassessments as indicated.
(Emphasis added.)
The ALJ made the following findings regarding the alleged record-keeping violation:
44. The Department has established by clear and convincing evidence that Dr. Christian failed to record or maintain daily treatment notes that justified the totality of the care provided to M.M. On May 30, 2006, and June 20, 2006, the daily treatment notes do not show any subjective findings or objective findings that would justify the treatment provided. There were no notes indicating why treatment was provided in the areas in which the treatment was given. Dr. Christian left the determination of the areas of treatment to his assistant, but the records do not include the justification for the treatment areas that were chosen. The Department has established by clear and convincing evidence that. Dr. Christian . violated sections 460.413(l)(m) and 460.413(l)(ff) by violating rule 64B2-17.0065(3), which requires that daily records justify the treatment that is provided.
(Emphasis added.)
The ALJ based the findings of medical records violations on the administrative hearing testimony of Dr. Steven Willis, D.C. Dr. Willis testified that the medical record for May 30, 2006, indicated that the patient had no subjective complaints. Dr. *419 Christian provided four therapies on that date: heat therapy, intersegmental traction therapy, hydrotherapy, and interfer-ential therapy. Dr. Willis testified that “there is nothing indicating any clinical finding on that date of service to substantiate a reason to apply any of these therapies.” Dr. Willis testified that the medical records showed that the patient was treated with three modalities on June 20, 2006, including heat therapy, intersegmental traction therapy, and hydromassage. The patient had no subjective complaints, and the record for that date did not provide any justification for the treatments rendered.
Dr. Donald Woeltjen, D.C., testified as an expert witness for Dr. Christian. He had reviewed all the records in this case, and he indicated that Dr. Christian maintained daily treatment notes justifying the treatment provided and that he sufficiently documented the course and the results of the treatment. Dr. Woeltjen based his opinion on his review of the record of the treatment plan, the individual treatment notes, and the reexaminations. Dr. Christian testified in his own defense that he first examined the patient on April 26, 2006. At that time he prescribed treatment four times a week for four weeks, including intersegmental traction, hot pack treatment, neuromuscular release, and in-terferential treatment. Dr. Christian performed a follow-up examination on May 24, 2006. Because the patient was showing signs of improvement, Dr. Christian reduced the treatment to two times a week for five weeks. Dr. Christian testified that he examined the patient again on June 14, 2006, when, with the patient showing further improvement, he prescribed treatment once a week for four weeks. He subsequently reexamined the patient on July 25, 2006.
Dr. Christian filed an exception to paragraph 44 of the ALJ’s recommended order finding that he committed record-keeping violations. He contended that rule 64B2-17.0065(3) requires only that the daily records taken as a whole justify the treatment provided. Dr. Christian asserted that the treatments given on May 30 and June 20, 2006, were provided as part of treatment plans that were already in place and that his testimony established that once a treatment plan was in place, it was to remain unmodified until the patient’s next comprehensive examination. Dr. Christian further asserted that his daily records for May 30 and June 20 complied with rule 64B2-17.0065(6). The Board rejected Dr. Christian’s exception to paragraph 44 and adopted the hearing officer’s finding of violation.
First, we must recognize that “[t]he appellate court affords great weight to an agency’s construction of a rule that the agency is charged with enforcing and interpreting, but the court may depart from that construction if it is clearly erroneous.” Collier Cnty. Bd. of Cnty. Comm’rs v. Fish & Wildlife Conservation Comm’n, 993 So.2d 69, 72 (Fla. 2d DCA 2008). However, judicial deference to the agency’s interpretation of its own rule is not demanded where it is contrary to the plain language of the rule. Id. at 74. See also Kessler v. Dep’t of Mgmt. Servs., 17 So.3d 759, 762 (Fla. 1st DCA 2009) (holding that “[jjudicial deference never requires that courts adopt an agency’s interpretation of a statute or rule when the agency’s interpretation cannot be reconciled with the plain language of the statute or rule, taken as a whole”). Furthermore, section 120.68(7)(d), Florida Statutes (2005), states that a reviewing court shall remand a ease to the agency for further proceedings or set aside agency action when it finds that “[t]he agency has erro *420 neously interpreted a provision of law and a correct interpretation compels a particular action.”
Although section 460.413(l)(m) requires that a chiropractor keep medical records that justify the course of treatment, it does not require that the chiropractor justify that course of treatment on every single visit where treatment is being provided as part of an ongoing treatment plan. Likewise, rule 64B2-17.0065(3) also provides that a chiropractor must keep a medical record that justifies the course of treatment. We conclude that, in context, the plain meaning of the term “medical record” refers to the record taken as a whole and not that the notes for a particular day must again justify the treatment provided. This is made abundantly clear when the rule is read together with rule 64B2-17.0065(6), which delineates what must be specifically documented in the daily record once a treatment plan has been established. This rule does not require redundant justification for any ongoing treatment.
In the present case, the evidence adduced at the administrative hearing established that the treatment provided on May 30, 2006, was part of an ongoing treatment plan that was implemented following the May 24, 2006, examination where Dr. Christian diagnosed signs of improvement on the part of the patient. Because the May 30, 2006, treatment was administered pursuant to a treatment plan that was previously in effect, rule 64B2-17.0065(3) did not require that the medical record for May 30 again justify the treatment given on that date. Rather, at that point, Dr. Christian was only required to follow the strictures of rule 64B2-17.0065(6), which sets out what the daily records shall include once a treatment plan is established. As noted above, rejustification of the treatment plan is not one of the requirements of rule 64B2-17.0065(3).
Similarly, the evidence adduced at the administrative hearing also established that the treatment provided on June 20, 2006, was part of a treatment plan that was prescribed on June 14, 2006, when Dr. Christian reexamined the patient. Again, there was no necessity under the rules or the statute for Dr. Christian to rejustify the previously prescribed treatment in the medical record for June 20, 2006. At that point, pursuant to rule 64B2-17.0065(3), all Dr. Christian was required to document in the daily notes was any treatments provided, any subjective complaints of the patient, any objective findings by himself or his staff, and any assessments made by himself or his staff. Thus, for example, the lack of subjective complaints during a treatment prescribed as part of an ongoing plan is a non sequitur to an analysis of whether the records were properly maintained.
We conclude that the Board’s adoption of the findings of the ALJ in paragraph 44 of the recommended order was predicated on an erroneous reading of rule 64B2-17.0065. Accordingly, under a plain reading of the rule, there was not sufficient clear and convincing evidence to support a finding that Dr. Christian failed to record or maintain daily treatment notes that justified the totality of care provided. We therefore also reverse that portion of the corrected final order adopting paragraph 44 of the recommended order. See Hammesfahr v. Dep’t of Health, Bd. of Med., 869 So.2d 1221, 1222-23 (Fla. 2d DCA 2004) (reversing the final order of the Board of Medicine disciplining Dr. Hammesfahr for financial exploitation of a patient where the Board’s determination was not supported by clear and convincing evidence).
*421 The corrected final order is reversed in toto with directions to the Board to dismiss the administrative complaint.
ALTENBERND and KELLY, JJ, Concur.

. The administrative complaint alleged twenty-three violations of Florida law, a number of which were dropped at or prior to the administrative hearing.

. Dr. Christian filed an exception to the lack of any allegations in the complaint to support the violation found in paragraph 45 of the AU’s recommended order. Interestingly, a member of the Board moved to accept this exception, but when the Board’s attorney inexplicably interjected, “I do not believe that this Board has the ability to say [that] what was the administrative complaint was pled or not pled properly[,]” the motion was withdrawn.